```
 1
 2
 3
 4
 5
 6
 7                   UNITED STATES DISTRICT COURT
 8                  CENTRAL DISTRICT OF CALIFORNIA
 9                         WESTERN DIVISION
10
11  ROSALINDA FERNANDEZ,            )  No. SA CV 13-00711-VBK
                                    )
12               Plaintiff,         )  MEMORANDUM OPINION
                                    )  AND ORDER
13        v.                        )
                                    )  (Social Security Case)
14  CAROLYN W. COLVIN, Acting       )
    Commissioner of Social          )
15  Security,                       )
                                    )
16               Defendant.         )
                                    )
17
```

18      This matter is before the Court for review of the decision by the
19 Commissioner of Social Security denying Plaintiff's application for
20 disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have
21 consented that the case may be handled by the Magistrate Judge.  The
22 action arises under 42 U.S.C. §405(g), which authorizes the Court to
23 enter judgment upon the pleadings and transcript of the record before
24 the Commissioner.  The parties have filed the Joint Stipulation
25 ("JS"), and the Commissioner has filed the certified Administrative
26 Record ("AR").
27      Plaintiff raises the following issues:
28      1.   Whether the Administrative Law Judge's ("ALJ") residual

```
            functional capacity assessment is supported by substantial
            evidence;
    2.   Whether the ALJ properly evaluated Plaintiff's subjective
            complaints; and
    3.   Whether remand would be appropriate to consider the proper
            onset of disability in light of a subsequent grant of
            benefits.
```
(JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ CORRECTLY ASSESSED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

Following administrative denials, a hearing was held before the ALJ on December 20, 2010, at which testimony was taken from Plaintiff (who was represented by counsel), a vocational expert ("VE"), and a medical expert ("ME"). (AR 39-61.) Following this, the ALJ rendered an unfavorable Decision on February 7, 2011. (AR 23-33.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with certain exertional limitations, and that she is also limited to simple work tasks that involve simple work-related decisions. (AR 26.)

With regard to Plaintiff's physical RFC, she contends that the ALJ improperly rejected or depreciated the opinions of her treating physicians, Dr. Sato and Dr. Pang. (JS at 5, et seq.) Instead, the ALJ relied upon the conclusions of Dr. Nafoosi, the ME. (AR 31, 44-47.)

1    The Court must determine whether the ALJ's determination has the
2 support of substantial evidence and is free of material or legal
3 error. Plaintiff asserts that the opinions of Drs. Sato and Pang
4 should have been credited.  In particular, Dr. Sato diagnosed
5 fibromyalgia, chronic low back pain, depression, anxiety, and a
6 history of abuse. (AR 601.) Among other restrictions including
7 limitations on sitting, standing and walking, Dr. Sato opined that
8 Plaintiff would be "off task" 25% or more in a typical workday and
9 would be absent more than four days per month. (AR 604.)
10    Dr. Sato's opinion was rendered on October 20, 2010. Five days
11 later, Plaintiff's treating rheumatologist, Dr. Pang, also diagnosed
12 fibromyalgia, assessed exertional limitations as to sitting, standing
13 and walking, and also concluded that Plaintiff would be "off task" 25%
14 or more in a typical workday, and that she would be absent more than
15 four days per month. (AR 608.) The opinions of Drs. Sato and Pang as
16 to Plaintiff's functional restrictions are essentially identical.
17    As support for her contention that the ALJ improperly rejected
18 the opinions of these two physicians, Plaintiff points to the medical
19 record which, she asserts, documents her complaints of back pain,
20 weakness, fatigue, sleep disturbance, hand pain/numbness and right
21 shoulder pain. (JS at 6, citing to the AR.)
22    The ALJ relied upon Dr. Nafoosi's opinion. Plaintiff asserts that
23 because Dr. Nafoosi was not board certified at the time of his
24 testimony, his opinion should have been depreciated, and indeed, she
25 asserts that by itself it cannot constitute substantial evidence that
26 justifies rejection of the opinions of Drs. Sato and Pang. (See JS at
27 6.) Further, citing 20 C.F.R. § 416.927(c)(5), Plaintiff asserts that
28 as a specialist in the area of fibromyalgia, Dr. Pang, a

3

rheumatologist, should have been accorded more deference. (JS at 6.)

The Court's review of the ALJ's Decision, and citations therein to the AR, clearly lead it to the conclusion that the ALJ carefully examined medical evidence, and relied upon substantial independent clinical findings, and self-reporting of the Plaintiff, which substantially contradict the conclusions of Drs. Pang and Sato. These are set forth in the Commissioner's contentions in the JS (id. at 10, et seq.), which will be briefly summarized here.

First, the ALJ substantially relied upon the opinion of treating physician Dr. Fralick, a pain specialist. (See AR at 26-27.) The rather complete discussion of Dr. Fralick's findings in the ALJ's Decision cites to substantial objective and subjective evidence which do not support, and indeed, contradicts, the conclusions of Drs. Sato and Pang.

Plaintiff treated with Dr. Fralick in 2008-2009 for her complaints of low back pain, right carpal tunnel syndrome, right shoulder pain, and myofascial pain. (See AR at 26-27, and citations to record.) As the ALJ noted, objective testing in 2008 did confirm that Plaintiff suffers from right carpal tunnel syndrome and mild degenerative changes in her right shoulder. (AR 251, 433.) Her physical examinations in 2008 and 2009, however, were essentially normal. (AR 26-27.) She had functional range of motion with mildly limited low back range of motion in November 2008 (AR 249, 433-434, 632), and she had full motor or muscle strength, intact sensation to light touch, negative straight leg raising tests, and a normal gait. (See citations to record at JS 11.) Her subjective reporting to her physicians at this time indicated that she walked on a daily basis, did not have headaches, fatigue, muscle aches, joint pain, limb

4

weakness, or anxiety. (AR 28, 270 275, 280.)

Dr. Fralick also noted that Plaintiff did not consistently follow conservative treatment recommendations, and as an example, he reported that Plaintiff did not give Motrin an "adequate try." (AR 27, 440.) She did not wear her wrist splint for hand pain (AR 27, 433), and failed to use a heating pad even though heat therapy had helped her pain. (AR 436.) She declined Dr. Fralick's referral to a psychologist. (AR 433, 436.)

Significantly, Dr. Fralick noted that Plaintiff's subjective reporting of extreme pain in her low back at a level of 10 out of 10 were out of proportion to what he observed as to her ability to move and change positions during physical examination. (AR 27, 436.) Dr. Fralick declined to complete a disability form because he felt that she did not qualify. (AR 27, 29, 436.)

Regarding ameliorative measures, Plaintiff reported that physical therapy helped her. (AR 27, 433, 437-477.) There was improvement in her low back pain. (AR 433.) In February 2010 MRI, objective findings showed mild disc disease in her low back at L5-S1 with narrowing of the foraminal passageways. (AR 571.)

In April 2010, Plaintiff enrolled in a pain management program, reporting pain, headaches and insomnia. (AR 559-560.) She indicated to her physicians, however, that she was able to drive, swim, do some household tasks, walk around the market, and visit friends on occasion. (AR 560.) At the conclusion of this program in July 2010, Plaintiff reported that she had good success including improved endurance, weight loss, and decreased pain levels which had gone from a 9/10 to 3/4. (AR 27, 493, 516, 521, 535.) She indicated to Dr. Sato that she had no side effects from pain medications. (AR 27, citing to

the record.)

When Plaintiff saw Dr. Pang in August and October 2010, she presented as a well nourished, well developed female with no acute distress, who showed on objective testing normal (5/5) motor strength and intact sensation, and no trigger points. (AR 574, 632.) She received a trigger point injection for neck pain from Dr. Sato in December 2010. (AR 633.)

The State Agency physician who reviewed records in October 2009 assessed that Plaintiff was capable of light work with certain limitations (AR 31, 368-373.) In January 2010, another State Agency physician reviewed further treatment evidence and confirmed the prior State Agency physician's opinion as to Plaintiff's exertional abilities. (AR 31, 486.) Finally, a third State Agency physician reviewed the evidence in February 2010 and rendered an opinion that Plaintiff could perform light work with certain postural limitations. (AR 31, 49.)

Based upon his review of all of the medical evidence, the ME testified at the hearing that Plaintiff had certain functional limitations, which equated to the ultimate RFC finding of light work with certain exertional and nonexertional restrictions.

Clearly, the opinions of Drs. Sato and Pang are inconsistent with much of the objective medical evidence, not only of other medical providers, but with much of Plaintiff's own subjective reporting. In such cases, the ALJ need not adopt the opinions of treating physicians if it is found that they are not well supported by extensive clinical and laboratory diagnostic techniques or if they are inconsistent with other substantial evidence in the record. (See 20 C.F.R. § 416.927; SSR 96-2p.)

1    In this case, as the Court has summarized, and as the ALJ
2 discussed in detail, the opinions of Drs. Sato and Pang are in
3 conflict with two years of treatment records, and much of Plaintiff's
4 own self-reporting. In such cases, the ALJ is entitled to discredit or
5 depreciate the opinions of treating physicians. See Batson v.
6 Commissioner of Social Security Administration, 359 F.3d 1190, 1195
7 (9th Cir. 2004).
8    The ALJ further noted that Plaintiff's condition had improved
9 with treatment, when she followed it. Again, an ALJ may rely upon such
10 evidence in assessing whether to accept the opinions of physicians who
11 conclude that an individual is not capable of working. See Rollins v.
12 Massanari, 261 F.3d 853, 856 (9th Cir. 2001).
13    Finally, the objections made by Plaintiff to the qualifications
14 of Dr. Nafoosi are rejected because, as Plaintiff concedes, there is
15 no requirement of board certification of an ME. The Court need not
16 further delve into that objection. See 20 C.F.R. § 416.928(e)(2)(I).
17    For the foregoing reasons, the Court concludes that the ALJ's
18 assessment of Plaintiff's RFC is supported by substantial evidence.

**II**

**THE ALJ DID NOT ERR IN ASSESSING PLAINTIFF'S CREDIBILITY**

In the Decision, the ALJ depreciated Plaintiff's credibility as to her subjective symptom reporting. (AR 28-29.) Plaintiff asserts that the ALJ erred in not meeting the established legal standards, which are a demonstration of clear and convincing reasons in the absence of malingering. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).

While Plaintiff asserts that the ALJ failed to understand the

7

ramifications of fibromyalgia, the record indicates otherwise. In fact, the ALJ set out a number of specific reasons to reject Plaintiff's subjective symptom reporting, none of which are seriously disputed here by Plaintiff.

First, the ALJ evaluated the opinions and observations of treating physician Dr. Fralick, whose findings have already been summarized in the Court's discussion of Plaintiff's first issue. Dr. Fralick observed that Plaintiff had exaggerated her symptoms, which is a relevant factor in credibility assessment. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

Next, the ALJ considered the contradiction between Plaintiff's testimony as to side effects from her medications (AR 49), with her repeated reports to her physicians that she did not have such side effects. (AR 28, 517, 518, 522, 530, 606.)

The ALJ also considered that despite Plaintiff's testimony at the hearing that she has poor concentration, the treatment notes of her providers indicate that she in fact has good concentration. (AR 29, 516.)

The ALJ also discounted Plaintiff's credibility because the evidence as to her activities of daily living ("ADL") were substantially inconsistent with her claims of disabling pain. She testified that she rarely leaves her house, does very little at home, requires help from her daughter for self-care, meal preparation and driving to appointments. (AR 29, 49-51.) In contrast to this, among other things, the ALJ relied upon the report of Plaintiff's sister which described Plaintiff's ADLs as being far in excess of what Plaintiff herself had reported. (AR 198-202.)

1    All in all, the Court concludes that the ALJ provided specific
2 and legitimate reasons based on the facts in the record which clearly
3 and convincingly dispute Plaintiff's own subjective symptom reporting.
4 For that reason, Plaintiff's second issue is determined to be without
5 merit.

### III
**THE COURT DOES NOT CONSIDER THAT REMAND IS APPROPRIATE IN ORDER TO RECONCILE THE CURRENT DECISION WITH A SUBSEQUENT GRANT OF BENEFITS**

10   Plaintiff notes that in a Decision issued on July 25, 2013 (see
11 JS, Exhibit ["Ex."] 1), the same ALJ found Plaintiff to be disabled on
12 February 8, 2011, which is one day after the Decision issued in this
13 case. (JS at 27.) Plaintiff acknowledges the holding of Bruton v.
14 Massanari, 268 F.3d 824, 827 (9th Cir. 2001), in which the Court
15 rejected the proposition that a disability finding made one day after
16 a prior ALJ Decision finding non-disability constituted per se good
17 cause for remand. Plaintiff does, however, point to the Ninth
18 Circuit's decision in Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir.
19 2010), in which the Court held that such a disability finding could
20 constitute good cause for remand under Sentence Six.

21   In Luna, the Ninth Circuit noted that it had no evidence before
22 it concerning the second application or the second decision, and thus
23 remanded for further proceedings because of a "reasonable possibility"
24 that the subsequent grant of benefits was based on evidence not
25 considered by the ALJ as part of the first application. (Id. at 1034-
26 1035.) Thus, the decision in Luna distinguished the Circuit's previous
27 in Bruton because in the latter case, it was clear from the record
28 that the second application involved different medical evidence, a

9

different time period, and a different age classification. (Id. at 827.)

The Court agrees here with the Commissioner's contention that there is no uncertainty as to why the identical ALJ decided the two applications filed by Plaintiff in different fashions. As noted in the JS, in the second application, Plaintiff alleged entirely new impairments – restrictive lung disease, chronic obstructive pulmonary disease, and obesity (see Ex. 1, Decision at 3.) The second application involved different medical evidence and also a different time period. Further, the treating sources were not the same (in the second application, Plaintiff relied upon treating physicians Drs. Ali and Weissig). Finally, in the second application, there was a different age classification involved. At the time of the first application, Plaintiff was considered a "younger individual aged 18-49," and in the second application, she was considered to be "closely approaching advanced age." These changes have significant vocational implications. See 20 C.F.R. § 416.963(c)-(d).

For the foregoing reasons, the Court finds that this case falls under the rationale of Bruton rather than Luna. Thus, remand is not called for, and the Court thus rejects Plaintiff's third issue. There is no need to reconcile the two applications based on the differing factors which the Court has discussed.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: March 5, 2014            /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE